(June 12, 1964)

■ HELEN H. SANSONE et al., as Executors of THOMAS A. SANSONE, Deceased, Appellants, v. STATE OF NEW YORK, Respondent. (Claim No. 40321.) — Judgment affirmed, without costs.

HERLIHY, J. (dissenting). Decedent was killed in an automobile collision in the intersection formed by New York Route No. 365-A, commonly known as the East-West Arterial Highway, and East Walnut Street in the City of Oneida. On September 30, 1961 shortly after 5 o'clock in the afternoon, the decedent was driving in an easterly direction on the East-West Arterial, and his vehicle was struck on the left rear side by a car driven by Robert Dixon who had been proceeding in a southerly direction on East Walnut into the intersection.

This claim is founded on the alleged negligence of the State in failing to erect a stop sign to control traffic proceeding in a southerly direction into the intersection of East Walnut Street with the East-West Arterial and its alleged negligence in knowingly permitting a stop sign, located on Wilson Street, which controlled traffic proceeding onto East Walnut Street north of said intersection, to remain in position which indicated to any motorist obeying such stop sign that East Walnut Street was or remained the dominant traffic flow street when the contemplated use of the East-West Arterial was as a dominant traffic passage.

The claim alleged that at the time of the accident, construction had been completed to a point so that the East-West Arterial had been open to, and had continuous use by traffic for a number of weeks; that prior to the construction of the East-West Arterial, East Walnut Street was one of the principal thoroughfare streets in the City of Oneida and the entrance of traffic onto that street was controlled by the placement of stop signs on the secondary streets, one of which was Wilson Street which intersected from the west, north of the intersection of East Walnut and Prospect Streets; that Prospect Street, prior to construction, intersected with East Walnut Street from the east, at the intersection where the accident occurred, dead ending there and the result of the construction being that Prospect Street was extended to cross East Walnut and continue in a westerly direction to form the East-West Arterial. When the accident occurred, decedent had entered the intersection from this extension.

After trial, the court dismissed the claim, and found as a matter of law that the State's failure to erect a stop sign did not constitute negligence; that the accident was caused either by the negligence of Dixon or by the combined negligence of the deceased and Dixon, that the State was not contributorily negligent and that "the claimants have failed to establish that this accident was caused by any negligence on the part of the State."

In my opinion, the claim was so framed that it was reversible error for the trial court to exclude testimony as to the traffic conditions existing in relation to the intersection prior to the accident. The claimant should have been permitted to show by testimony and photographs the alleged change in the traffic

flow by the opening of the East-West Arterial, and the traffic conditions at the intersection.

Furthermore, from the record as a whole, it is not clear what the duties of the State Department of Public Works, the State Traffic Commission and the City of Oneida were regarding the erection of traffic control devices at the intersection. Whether they were coterminous, divisible or otherwise defined, remains an open question.

On February 15, 1960 the Director of the State Traffic Commission sent a letter to the Mayor of Oneida, a copy of which was sent to the Superintendent of Public Works, which contained a traffic control plan for the East-West Arterial Highway. This plan, which was the result of a traffic control study made by the Department of Public Works, included a proposal for the erection of the stop sign in question. The letter stated in reference to Stop requirements " The Stop requirements may be covered by City Ordinances or by Traffic Commission Order. Most Cities prefer that the Ordinance procedure be utilized. If this is done, approval of the Ordinance is required by Section 1684 of the Vehicle and Traffic Law. In either case, the STOP signs will be erected by the State Department of Public Works."

There was testimony that it was not the practice of the Department of Public Works to notify the Traffic Commission that it was opening highways to traffic, and that the Department of Public Works does not proceed to install any traffic controls until they receive orders from the State Traffic Commission.

The State argued on the appeal that it had no duty to erect a stop sign on East Walnut Street because the Arterial was unfinished. The State read section 349-d of the Highway Law with subdivision 1 of section 1621, section 1640 (subd. [a], par. 1) and section 1684 of the Vehicle and Traffic Law to reach this conclusion.

A reading of section 349-d of the Highway Law indicates that it is concerned with the maintenance and repair of highways to be designated in the State system by the Superintendent of Public Works. Such designation does not prevent the disposition of traffic control devices by the State Traffic Commission where the highway is being built under contract with the State according to plans approved by the State Department of Public Works and opened to traffic by that same department.

As to the happening of the accident, it could be found that the State was concurrently liable with Dixon, the operator of the other car.

Dixon testified to the fact, corroborated by an eyewitness, that he brought his car to a complete stop at the stop sign at the corner of Wilson and East Walnut before proceeding southerly on East Walnut, and that he had observed a warning sign which had been erected on the west side of East Walnut which read:

" CONSTRUCTION
AT INTERSECTION

TRAVEL RESTRICTED
PURSUANT TO SECT. 104A HIGHWAY LAW AND
SECT. 1652 VEHICLE AND TRAFFIC LAW

OBEY SIGNS
DIRECTIONS
NEW YORK STATE DEPT. OF PUBLIC WORKS ".

He further testified that his speed was 20 to 25 miles per hour, that he was not aware that traffic was permitted on the arterial prior to the accident and that he did not look to the right because he was used to looking to the left for oncom-

ing traffic on Prospect Street. The legend on the sign certainly may have served to support his mistaken knowledge that traffic was not open on the arterial, and the fact is, as he approached the intersection, there were no signs or directions for him to obey. It can be inferred that Dixon would have stopped if a stop sign had been erected, just as he stopped in obedience to the stop sign at the corner of Wilson and East Walnut.

The judgment should be reversed and a new trial granted.

Reynolds, Taylor, Aulisi and Hamm, JJ., concur in decision; Herlihy, J. P., dissents in a memorandum, and votes to reverse and grant a new trial.

Judgment affirmed, without costs.